**John H. BERRA, Plaintiff,**

v.

**PAPIN BUILDERS, INC., Defendant-Appellant,**

v.

**William NAHN and Shirley Nahn, Defendants-Respondents.**

No. 49334.

Missouri Court of Appeals,
Eastern District,
Division Seven.

Feb. 11, 1986.

Motion for Rehearing and/or Transfer Denied March 11, 1986.

Stephen Michael Prosperi, Clayton, Mo., Belinda Jean Buchanan, St. Louis, Mo., for defendant-appellant.

Scott O. Marshall, David L. Welsh, St. Louis, Mo., for defendants-respondents.

KAROHL, Presiding Judge.

Defendant, cross-claimant and general contractor, Papin Builders, Inc. (Papin), appeals judgment in favor of defendant property owners, William Nahn and Shirley Nahn, (Nahns), on claim for breach of construction contract, and request for a mechanic's lien. Plaintiff, John H. Berra, d/b/a John H. Berra Construction Company, a subcontractor, obtained a judgment against Papin and the Nahns in the sum of $11,620.88 with interest and costs, and a mechanic's lien to secure the judgment. The trial court entered a judgment in favor of Papin, and against the Nahns on Nahns' cross-claim alleging slander of title. It denied Papin's cross-claim without findings, conclusions or comment. The judgment in favor of John H. Berra has been satisfied. Only Papin has appealed.

On September 22, 1982, Papin and the Nahns executed a written contract which provides in pertinent part as follows:

*Item 1.* The Contractor [Papin] shall complete but not limited to grading, sewers, and engineering for the entire project. Complete the paving in the first phase which includes the entrance, main drive, cul-de-sac and the driveway paving necessary to complete display units. Balance of paving to be done as units are built.

*Item 2.* Do the development work in a timely manner.

*Item 3.* Construct three (3) display units in building number one (1) and finish to Owner's [Nahn] satisfaction. Balance of units to be constructed after being sold and under contract.

*Item 4.* Payments to Papin Builders, Inc., to be made as follows:

1. Development work to be paid for as work progresses and bills are received at Papin Builders, Inc. Bills will be submitted to Webster Groves Trust Co., for payment with copies of invoices lien waivers, 15% overhead and 12% profit.

2. Cost of units will be paid to Papin Builders, Inc., as follows:

a) Upon foundation completion

b) Upon roof completion

c) Upon drywall completion, and

d) Upon finish of units

Bills submitted to Webster Groves Trust Co. will include copies of invoices, lien waivers, 15% overhead and 10% profit.

The Nahns acquired the property by deed from Shirly Nahn's mother in July 1982. Prior to the written contract, and before and after July 1982, Papin had begun to develop the subject property on "Telegraph and Highway 270" as a residential development to be known as Williamstowne Terrace Condominiums. Papin had incurred expenses including the cost of survey work and engineering, plans, drawings, blueprint preparation, site work and wages. Also prior to the written contract, Papin had invoiced to William Nahn Company various services pertaining to the property. On September 13, 1982, Papin entered into the contract with Berra Construction Company for grading work. This contract was the basis on which Berra obtained a money judgment against Papin supported by a mechanic's lien on Nahns' real estate.

The total estimated cost for development was $375,000. The Nahns "accepted" a loan commitment from Webster Groves Trust Company in the amount of $200,000. The written contract was prepared and exe-cuted by the Nahns and Papin at the request of the trust company. According to the written contract, disbursement of the loan was to be on invoice submitted to Webster Groves Trust Company. No funds were used pursuant to the loan commitment, and subsequent loan applications were either rejected by banks and lending institutions or not accepted by the Nahns.

On October 26, 1982, Berra began grading work under the subcontract. On November 5, 1982, Papin instructed Berra to stop further work because Papin believed the Nahns had failed to secure adequate financing to continue the development. Berra had completed an estimated 40% of the grading and excavation work. On November 17, 1982, Papin ceased work on the property because it "got uncomfortable with the thought that there wasn't going to be a loan provided for the construction on the project." Papin did not advise the Nahns that it was going to abandon the project, only that it had stopped work. The Nahns never directed Papin Builders to continue or resume development work after November 17. On February 23, 1983, Berra filed a mechanic's lien to secure payment for work completed on the property.

On March 17, 1983, Papin sent an invoice addressed to Mr. and Mrs. William Nahn for $32,167.07. This included a claim of Berra Construction Company for $9,500. All prior invoices from Papin had been addressed to "Wm. Nahn Co." at the home address of the Nahns. On May 17, 1983, Papin filed a mechanic's lien statement and attached as exhibits the written contract of September 22, 1982, and a statement of account with charges beginning on November 6, 1981, and concluding on April 10, 1983. The statement of account included charges for overhead and profit under the written contract of September 22, 1982. The total amount of the claim was $40,-541.90, including $9,500 for Berra, and $8,619.14 for overhead and profit.

On May 27, 1983, the Nahns paid Papin $6,686 on the account. At the same time, Papin paid the Nahns $6,686 on a separate

obligation. The parties swapped "checks" in the same amount.

On June 23, 1983, Berra filed suit on the subcontract, and to enforce its mechanic's lien. Subsequently, Papin filed a cross-claim on its contract with the Nahns, claiming a mechanic's lien, and the Nahns filed a cross-claim for slander of title. The present appeal by Papin is from an adverse judgment entered on September 10, 1984, entered by the trial court without findings of fact or conclusions of law. We, therefore, do not know and do not have the benefit of the trial court's view of the facts and law.

Our review is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. We defer to the trial court's opportunity to adjudge the credibility of witnesses. *Cook v. Lodes*, 560 S.W.2d 64, 65 (Mo.App. 1977).

■ Papin first argues that it was entitled to judgment as a matter of law on the theory of quantum meruit. To recover on that theory, plaintiff must plead and prove that it provided to defendant materials or services at the request or with the acquiescence of defendant, that those materials or services had a certain reasonable value, and that defendant despite demands of plaintiff, has failed and refused to pay the reasonable value of those materials and labor. *Berra v. Bieg Plumbing Company, Inc.*, 584 S.W.2d 116, 118 (Mo.App.1979), and cases cited therein.

The cross-claim alleged that the parties executed a certain written construction contract on September 22, 1982, that materials and labor were furnished by Papin at the special instance and request of and under contract with defendants Nahn; that Papin invoiced its request for payment pursuant to the provisions of said contract; and, that the account constitutes one continuous running connected account for labor and mate-

rials furnished in strict compliance with the instructions and directions of defendants Nahn *pursuant to the provisions of the construction contract.* The cross-petition refers to services under oral agreement pre-dating "the written memorial" set forth in the written contract. Further, both the lien statement and the cross-claim of Papin requests overhead and profit "per contract."

■ We find that the cross-claim filed by Papin is founded only in contract. Accordingly, we need not address the Nahns' position that if a petition alleges an express contract, there can be no recovery on quantum meruit. *See O'Neal v. Mavrakos Candy Co.*, 255 S.W.2d 138, 140 (Mo.App.1952). We do not find the cross-claim to be unclear so as to entitle Papin to judgment on either the theory of quantum meruit or express contract depending upon whichever theory the evidence supports. *See Johnson v. Estate of Girvin*, 414 S.W.2d 245, 248 (Mo. banc 1967). Papin pleaded and relied only on allegations of express contract, and the trial court did not err for failure to grant a money judgment, as a matter of law, on the not pleaded theory of quantum meruit.

Papin next contends that on its pleadings, proof, and the admissions of defendants Nahn, it was entitled to judgment on the express contract as a matter of law. The Nahns erroneously assert that Papin cannot recover under the contract for failure to allege and prove full performance. It appears the trial court judgment on Papin's claim under an alleged express construction contract was granted upon this basis. We conclude that the trial court misapplied the law of construction contracts, and we reverse and remand the judgment denying Papin's claim.

■ As a general rule, plaintiff must plead to state a cause of action for breach of contract: (1) an agreement between parties capable of contracting; (2) mutual obligations arising thereunder with respect to a definite subject matter; (3) a valid consideration; (4) part performance by one party

and prevention of further performance by the other; (5) damages measured by the contract and resulting from its breach. *State ex rel. Fletcher v. Blair*, 352 Mo. 476, 178 S.W.2d 322, 324 (1944). An exception to the rule requiring plaintiff to plead full performance or part performance, and excuse of full performance, exists when provisions of the contract itself permit recovery on the contract for less than full performance. *See Ark Construction Company v. City of Florissant*, 558 S.W.2d 418, 421 (Mo.App.1977). A construction contract will fall within this exception where the plaintiff makes a claim before fully performing. In the instant case, the express contract provides that payments be made to Papin "as work progresses and bills are received." When Papin invoiced the Nahns on March 17, 1983, neither party was in default on the contract. Papin had begun and then stopped work, and the Nahns had not demanded further work. On May 27, 1983, the Nahns made partial payment of the invoice. To that date, no breach had occurred unless it was in the failure of the Nahns to pay the invoice. Papin was not obligated to proceed until the invoice was settled, and the Nahns did not make a contrary demand. Papin does not plead breach of the entire contract where pleading and proof of full performance or part performance with excuse are elements of the cause of action. They are only requesting payment for work completed or performance to date according to an express term of the contract.

We considered a similar case in *Cork Plumbing Company, Inc. v. Martin Bloom Associates, Inc.*, 573 S.W.2d 947 (Mo.App.1978). There, the property owners failed to make payment of progress invoices, and failed to adequately finance the construction contract. We noted the general rule of anticipatory breach of contract by repudiation when one party repudiates it by manifesting an intention not to perform. 573 S.W.2d at 956. In *Cork*, we found that the contract authorized termination for non-payment. We there said,

Because of the nature of construction contracts and the contractor's need for funds to meet expenses and proceed with construction, courts have distinguished construction contracts from other installment contracts with respect to the subcontractor's right to terminate for non-payment of installments. This judicial sentiment is expressed in *Brady Brick & Supply Company v. Lotito*, 43 Ill. App.3d 69, 1 Ill.Dec., 844, 848, 356 N.E.2d 1126, 1130 (1976); "building and construction contracts frequently provide for partial payments to be made to the contractor as the work progresses, either periodically or upon completion of specified stages of the work and like any other contract may be rescinded for default in performance. The failure to pay an installment of the contract price as provided in a building or construction contract is a substantial breach of the contract and gives the contractor the right to consider the contract at an end to a cease work, and to recover the value of the work already performed."

*Id.* at 956–957.

In the present case, the Nahns failed to complete financing arrangements with Webster Groves Trust or some other bank. They made only a partial payment on the invoice without contesting the balance, and without demanding further performance. As in *Cork*, "[w]e must consider the effect of delays on the builder's finances, and '[s]ince the builder's risks depend largely upon the financial resources of the debtor, ... a non-payment by an obligor who is of doubtful solvency ... or who accompanies his non-payment by words of near repudiation is almost certain to be held a vital breach.'" *Id.* at 957.

On the question of sufficiency of pleadings to support judgment on the theory of express contract, we look to the cross-claim of Papin. Papin incorporated the September 22, 1982 written contract into its pleading. It alleged that it had provided materials and labor under the contract for which it had received one payment on account. This constitutes a pleading

based upon a construction contract, and satisfies the requirements of *State ex rel. Fletcher v. Blair*, 178 S.W.2d at 324, where the court concluded that the petition was not fatally defective from a failure to allege full performance. The court concluded that prevention of further performance was a sufficient pleading. In view of our analysis of construction contracts in *Cork*, an allegation that Papin had performed under the written contract which provided for payment as work progresses and bills received, followed by non-payment, is sufficient and will support judgment for breach of the contract. Under these circumstances, the contract itself permits recovery for less than full performance. *Ark Construction Company v. City of Florissant*, 558 S.W.2d at 421. The petition alleged performance to the time of invoice, which will suffice. Under these circumstances, an allegation of full performance was not required. We believe that the trial court's judgment on Papin's claim was based on Papin's failure to plead and prove full performance under the contract. This conclusion misapplies the law of construction contracts. Papin is only required to plead and prove performance to date to recover under a contract providing for progress payments.

The Nahns' reliance on *Missouri Military Academy v. McCollum*, 344 S.W.2d 636 (Mo.App.1961) is misplaced. There, a private school sued to collect on a tuition contract from a student who voluntarily withdrew. This court held that plaintiff's petition stated a cause of action where the petition alleged performance by plaintiff of all the terms of the agreement, and defendant breached by refusing to pay. The court applied the rule stated in *Blair* that plaintiff must allege part performance by one party, and prevention of further performance by the other. *Blair* 178 S.W.2d at 324. It was unnecessary that plaintiff allege it had provided all of the educational benefits called for under the contract. This case does not support the Nahns' claim that a claimant cannot sue on a contract without alleging its performance. It need only allege performance as called for

under the contract to the time of breach. The rule in *Blair* applied here is sufficient to support a cause of action where the property owner failed to obtain the anticipated financing, refused to pay the first invoice, and the contractor supplied materials and labor under the contract and nonpayment. An allegation and proof of full performance was not required to support the cause of action.

Accordingly, we find that the trial court erred in finding for defendants Nahn on Papin's cross-claim based upon the express contract. William Nahn admitted the oral agreement pre-dating the September 22, 1982 contract; that he authorized Papin to begin development before the written contract; that he was aware that the work had begun and expenditures had been made; that he was to be responsible for financing; that he had approved the sub-contract with Berra construction for the excavation work; and that Papin had performed some services *and was entitled to some payment*. Because the trial court found in favor of sub-contractor Berra on its contract with Papin, and supported the judgment by imposing a mechanic's lien on the Nahns' property, it must have found that the Berra sub-contract was supported by the general contract upon which Papin relies, and that the services rendered by Berra were for the benefit of the real estate owned by the Nahns. Papin's obligation to Berra was a part of the contract of Papin and the Nahns. If not, then Berra's mechanic's lien would not have been possible. But the Nahns did not appeal the mechanic's lien on their property in favor of Berra.

In the Berra petition, Berra alleged performance of all obligations until he was ordered to stop by Papin. Papin's cross-claim was only for the value of the materials and labor furnished under the contract for which payment was not made when invoiced. Neither Berra nor Papin claimed breach of contract damages in excess of what was due for the material furnished, and the services actually performed. Neither claim was for resulting or benefit of bargain damages by reason of breach of

contract on the part of the Nahns. Under this theory, full performance was not required, could not be alleged and does not prevent recovery. Accordingly, both the petition of Berra and the cross-claim of Papin alleged performance to the extent of the claim for damages. In contrast to the present petition, the petition in *Missouri Military Academy v. McCollum*, supra, claimed benefit of bargain damages, the full tuition. In such case, the petition must allege either full performance or prevention of performance. Because the court found in favor of Berra, who did not plead full performance but against Papin, we conclude that it considered the requirement of pleading and proof of full performance a prerequisite of recovery by Papin. This erroneously applied the law of construction contracts.

We do not reach the question of whether Papin is entitled to a mechanic's lien, in addition to such damages as may be found by the trial court. We express no opinion on whether Papin complied with § 429.012 RSMo 1978 with regard to timely notice of its intent to rely upon the mechanic's lien statute. In this respect, we observe that all invoices prior to the invoice on March 17, 1983 were addressed to "Wm. Nahn Co." and not to the owners, William Nahn and Shirley Nahn. Nor do we express an opinion on whether the items mentioned in the statement of account attached to the mechanic's lien, or any of them, are lienable items under Chapter 429.

We reverse and remand only the cross-claim of defendant Papin for a new trial on the issues of damages, and enforcement of mechanic's lien.

CRANDALL, J., and LOWENSTEIN, Special Judge, concur.