In re MARRIAGE OF Natasha
DeLEON and Jose DeLeon.

Natasha DeLEON,
Petitioner–Respondent,

v.

Jose DeLEON, Defendant–Appellant.

No. 58193.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 5, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 13, 1991.

Allan H. Zerman, Clayton, Michael A. Gross, St. Louis, for defendant-appellant.

William G. Buchholz, II, Rodolfo Rivera, Clayton, for petitioner-respondent.

CRANE, Judge.

This is an appeal by husband from an order pendente lite (PDL) in a dissolution of marriage action in which the trial court refused to recognize a prior foreign divorce decree between the parties. We reverse and remand to the trial court.

The trial court, in this dissolution of marriage action, entered a PDL order awarding wife $7500 per month for temporary child support and $2500 per month for temporary maintenance. As part of the PDL order, the court overruled husband's motion to dismiss for lack of jurisdiction and specifically found that a foreign prior divorce decree had been obtained by fraud and was not entitled to recognition. On appeal husband contends that the trial court erred in overruling his motion to dismiss the PDL for lack of jurisdiction and in making its finding regarding the evidence that the prior divorce decree was obtained by fraud. He also challenges the amounts awarded as excessive. We agree that the trial court erred in making the finding that the prior divorce decree was obtained by fraud and not entitled to recognition and reverse the PDL order on that basis. We accordingly do not reach husband's arguments relating to residency or the excessiveness of the award.

 As a threshold matter we must determine whether this court has jurisdiction to consider this issue on appeal. Al-though wife agreed at oral argument that this court should decide all of the issues presented by this appeal, our jurisdiction may not be conferred by waiver, silence, acquiescence, or consent, and it is incumbent upon us to *sua sponte* determine whether we have jurisdiction. *Corder v. Corder*, 546 S.W.2d 798, 800 (Mo.App. 1977); *L.F.H. v. R.L.H.*, 543 S.W.2d 520, 521 (Mo.App.1976). This is an appeal of an order granting a PDL motion. It is well-settled in Missouri that a PDL motion is a separate and independent proceeding. A PDL order which disposes of the merits is a final judgment from which an appeal may be taken. *Dardick v. Dardick*, 661 S.W.2d 538, 540 (Mo.App.1983). Failure to appeal from a PDL order confers finality upon it. *State ex rel. Carlson v. Aubuchon*, 669 S.W.2d 294, 296 (Mo.App.1984).

 In the PDL order before us, the court denied the motion to dismiss the PDL and found the prior divorce decree to have been obtained by fraud. Ordinarily a denial of a motion to dismiss is not final and thus not appealable. *St. Charles County v. Ross*, 718 S.W.2d 209, 210 (Mo.App.1986). However, an order denying a motion to dismiss can be considered as part of the appeal from a final judgment. *Lancaster v. Simmons*, 621 S.W.2d 935, 940 (Mo.App. 1981). Additionally, a challenge to the trial court's jurisdiction may be considered on appeal from a PDL order. *In re Marriage of Gillett*, 762 S.W.2d 525, 527 (Mo.App. 1988). Accordingly, in considering the appeal from the PDL order, we may also review the trial court's denial of the motion to dismiss the PDL motion and its finding that the prior divorce decree was invalid, which rulings were contained in and part of the final judgment issued by the court.

We obtain the background facts from the wife's verified statement of property, an authenticated copy of the divorce decree from the Dominican Republic, and wife's testimony at the PDL hearing. We do not recite nor consider the many facts supplied by the parties in briefs and oral argument which do not appear in the record. Natasha DeLeon [wife] and Jose DeLeon [husband] were both born in the Dominican

Republic and are citizens of that country. Prior to her marriage wife lived in Venezuela and in the Dominican Republic. Husband and wife were married in the Dominican Republic on February 14, 1985. In February, 1988 the parties purchased an apartment in Santo Domingo, Dominican Republic. From March 10, 1988 until October 23, 1988 the parties lived in a rented apartment in St. Louis County, Missouri. In October, 1988 they returned to their apartment in the Dominican Republic and purchased substantial household goods. They did not retain their apartment or any other residence in Missouri. Two children were born during the marriage, one in Pittsburgh in 1986 and one in St. Louis in 1988.

The parties were separated in the Dominican Republic on January 3, 1989. Husband thereafter commenced a divorce action in the courts of the Dominican Republic. A decree of divorce was entered on July 20, 1989 by the Civil Chamber of Commerce and Labor of the Court of First Instance of the Judicial District of La Vega. The decree was thereafter registered in La Vega, Dominican Republic. That decree recited that, according to "act number 58 (II)" dated April 2, 1989, wife was "notified by the Prosecuting Magistrate Attorney of this Judicial District to appear" on April 27 and that wife had failed to appear at that hearing "in spite of having been legally summoned." The decree further recited that wife "petitions for custody and guardianship" of the two minor children and awarded custody and guardianship to her. The decree found husband to be a Dominican citizen and a resident of La Vega, Dominican Republic. The decree "declared valid the session conducted by this court on the 27th of April 1989, being regular in its format and totally just."

Wife was in the Dominican Republic until May 4, 1989 when she came to Missouri with the two children. On June 15, 1989 she moved to the City of St. Louis and on June 16, 1989 she commenced her action for legal separation in the Circuit Court of the City of St. Louis. She filed an amended petition requesting an order dissolving the marriage on August 22, 1989. She also filed her original PDL motion on this date. On December 16, 1989, before the hearing on the PDL motion, wife moved out of the City of St. Louis, but remained in this state.

■ Husband moved to dismiss the PDL. One of his grounds was that the parties had already been divorced in the Dominican Republic. The trial court heard evidence on the validity of the Dominican divorce decree at the PDL hearing. The only challenge to the decree raised at the hearing and in the subsequent legal memorandum was that it had been obtained by fraud. As part of its order granting the PDL motion, the trial court found that the Dominican divorce decree was obtained by fraud and consequently was not entitled to recognition in this state. We agree that there was no substantial evidence to support that ruling. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ It is generally recognized that "[w]hile the full faith and credit clause of the federal constitution has no application to foreign (country) judgments, as a general rule ... state and federal courts give recognition and force and effect to judgments obtained in foreign countries to the same extent as in the case of judgments of sister states on the basis of comity." 50 C.J.S. Judgments § 904 p. 540 (1947). Consequently, the rules governing presumptions and burdens of proof will be the same whether the judgment is from a foreign country or a sister state.

■ A divorce decree obtained in a foreign country or a sister state carries a rebuttable presumption of validity. Where a court of record and of general jurisdiction in another state grants a decree of divorce which is valid in every respect within the jurisdiction of that state, it is presumed valid in every other jurisdiction. The presumption is that the court had the authority to render the judgment in question and that the necessary jurisdiction was properly acquired. *Trumbull v. Trumbull*, 393 S.W.2d 82, 88 (Mo.App.1965); *Venator v. Venator*, 512 S.W.2d 451, 453 (Mo.App.

1974); *Flexter v. Flexter*, 684 S.W.2d 589, 591 (Mo.App.1985). "What is accorded the decree is a prima facie validity which means that there is a rebuttable presumption that the decree is valid." *Trumbull, supra*, 393 S.W.2d at 88.

The burden of assailing the validity of a foreign divorce decree rests upon the person who attacks it, unless the proceedings show on their face that the judgment is not entitled to that presumption. *Scott v. Scott*, 441 S.W.2d 330, 333 (Mo. 1969); *Venator, supra*, 512 S.W.2d at 453–54. "(I)n order to vitiate a judgment of a court of competent jurisdiction upon the ground of fraud in the procurement of the judgment, such fraud must be shown by clear, strong, cogent and convincing evidence, leaving no room for reasonable doubt of its existence." *Butler v. Walsh*, 235 S.W.2d 826, 833 (Mo.App.1951).

An authenticated decree of divorce from the Dominican Republic was filed with the trial court, along with an uncontested translation. Attached to the decree is a document entitled "Notice of Summons for Divorce". Wife bases her claim of fraud on this notice. This document, dated March 27, 1989, recites that "in conformity with that which first divorce law number 1306 (II) states" husband notifies wife that "lacking any information about her present whereabouts, he will proceed to summon her to appear before a Prosecuting Magistrate Attorney" on April 12, 1989 so that "she may appear" before the court hearing the divorce on April 27, 1989 at 10:00 a.m. The notice recites wife's last known place of residence.

Wife claims that this was a notice by publication which was fraudulently obtained because husband should have known of wife's whereabouts. Wife argues that her testimony that she communicated her address and telephone number to husband's agent's secretary once a month supports this contention. That testimony by itself is not evidence of fraud. Even if we assume that the published notice was the only notice in the case, no time frame for these calls was established, nor was it established that the agent's secretary communicated with husband. No evidence of the divorce laws of the Dominican Republic was introduced to challenge the propriety of the March 27th notice, which stated it was issued in conformity with Dominican divorce law. Additionally, the decree states that wife was notified to appear at the April 27th hearing by the Prosecuting Magistrate Attorney by "act number 58 (II)" dated April 2, 1989. The decree further states that wife petitioned for child custody and guardianship, which would indicate that she had received actual notice of the proceedings. The decree also states that wife had failed to appear "in spite of having been legally summoned." No evidence was offered to controvert these recitals.

Wife did not prove by clear and convincing evidence that the Dominican divorce was obtained by fraud. On the contrary, the evidence established that the parties are citizens of the Dominican Republic, they were married there, they were living there at the time of their separation, and they owned substantial real and personal property located there. Wife did not leave the Dominican Republic until after the divorce hearing had been conducted. The Dominican court found husband to be a resident of La Vega, Dominican Republic and he also declared himself to be a resident in the notice of March 27. The decree declared that the divorce hearing on April 27 was valid, regular in its format and totally just. The presumption of the validity of the divorce decree of the Dominican court was not overcome. Accordingly, the ruling of the circuit court finding the Dominican divorce decree to have been obtained by fraud and not entitled to recognition is erroneous.

The order pendente lite of the circuit court is reversed and the case remanded to the circuit court for further proceedings consistent with this opinion.

REINHARD, P.J., and STEPHAN, J., concur.